968 So.2d 77 (2007)
William FUERY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1270.
District Court of Appeal of Florida, Fourth District.
November 7, 2007.
Howard Finkelstein, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant *78 Attorney General, West Palm Beach, for appellee.
GROSS, J.
William Fuery appeals an order finding no probable cause to release him from his involuntary civil commitment under the Jimmy Ryce Act, §§ 394.910-394.932, Florida Statutes (2006). Finding that he met his burden of proof at the section 394.918(3) limited probable cause hearing, we reverse the trial court's order and remand for a full trial held pursuant to section 394.918(4).
After being declared a sexually violent predator, Fuery was civilly committed under section 394.917(2). In March, 2007, the circuit court held a "limited hearing to determine whether there is probable cause to believe that [Fuery's] condition ha[d] so changed that it is safe for [Fuery] to be at large and that [Fuery] will not engage in acts of sexual violence if discharged." See § 394.918(3).
The only evidence at the hearing was Fuery's expert in forensic psychology, Natalie Novick Brown. Brown met with Fuery and spoke with his treating psychologist, Dean Cauley, and staff at the Florida Civil Commitment Center, where Fuery is confined. Brown also reviewed Fuery's treatment records and annual report.
Brown testified that Cauley "was very positive in . . . [h]is assessment of Mr. Fuery's genuine commitment to treatment." She noted that if Fuery was released to the community, Cauley agreed to continue treating him. Fuery's co-residents expressed that Fuery's "behavior on the compound away from the clinical [treatment] team . . . [w]as 100% positive or virtually 100% positive." Brown said that it was important to speak with these co-residents because "there are some sex offenders who are able to manipulate the impression that they're giving to the clinical team, and it's sometimes very difficult[] to detect when somebody is doing that."
She further explained that since 2003, Fuery has "made very good progress" in his intensive treatment at the Civil Commitment Center. Fuery successfully passed polygraph examinations testing his willingness to fully disclose the details of prior acts of inappropriate sexual activity, which Brown indicated was necessary to avoid such behavior in the future. Brown also stated that Fuery had begun to display empathy for other people, an important quality because "if an individual can actually experience those victims' feelings, they will not want to hurt them, they will not want to cause their victim to feel hurt or fear or pain or anything else." Brown explained:
Fuery has developed a thorough understanding of all the irrational thoughts that he had that maintained his behavior and how those were wrong, and he's been challenged in the group and he's been challenging other sex offenders in the group with respect to these behaviors. He's got it, essentially. He understands it. He knows when he's engaging in it. He stops himself and he does that appropriately. I don't see any deficit with regard to that. He's not reverting back at all to those behaviors.
Brown was also impressed with Fuery's "awareness" of sexual and emotional boundaries. She addressed Fuery's "triggers" and how he has properly learned to cope with them. Brown "looked far and wide for any flaws in what [Fuery was] doing" and she "couldn't find any." She relayed that he had been four years in treatment and he had learned to control his inappropriate sexual thoughts.
With respect to relapse prevention, Brown testified that Fuery had a "relapse *79 plan" involving his girlfriend and her family, but he also recognized the inappropriateness of relying on other people for his recovery for anything but initial assistance.
In sum, Brown opined as follows:
I feel that he's made sufficient progress in treatment. It's impossible to be 100 percent sure in terms of a crystal ball about what anybody's going to do in the future, but he's been practicing these techniques for four years now and there's been no evidence of any flaw in his self control, his volitional or his emotional control and there's been consistent positive result in terms of what he's applied.
So he's able to not only learn and repeat back the treatment components, but there's evidence that he's using those treatment components in his day-to-day life on the compound, which is full of lots of emotional and tangible problems and he's coping well with those things and using the techniques and treatments, so he's putting them into practice.
Brown explained that Fuery's age was now within the range where authoritative studies had show recidivism declines dramatically.[1] She noted that Fuery reached the highest stage of actual treatment that's offered at the Civil Commitment Center.
The circuit court found that there was "no probable cause to believe that [Fuery's] condition has so changed that it is safe for him to be released and that he will not engage in acts of sexual violence." The court ordered him to remain confined.
The trial court erred in weighing the evidence rather than determining its legal sufficiency.
A judge's review of the evidence in a section 394.918(3) limited probable cause hearing is similar to an evaluation conducted in response to a motion for directed verdictthe court must determine the sufficiency of the evidence presented, without weighing it and making credibility determinations. See In re Commitment of Allen, 927 So.2d 1070, 1074 (Fla. 2d DCA 2006); Westerheide v. State, 888 So.2d 702, 706 (Fla. 5th DCA 2004);. "[I]f the committed person presents evidence supporting release at a limited probable cause hearing, the trial court considers only that evidence to determine probable cause; it does not weigh the evidence against any . . . evidence presented by the State." See Allen, 927 So.2d at 1074. To make the probable cause determination, the court must assume that the petitioner's evidence is true, and then decide whether there is probable cause to believe that the petitioner's condition has changed. Westerheide, 888 So.2d at 706. If the petitioner satisfies this burden of proof, then a full trial should be held under section 394.918(4). Allen, 927 So.2d at 1074.
Unlike the petitioners in Allen and Westerheide, Fuery presented testimony that satisfied his burden of proof to establish probable cause. Brown concluded that Fuery was ready for release. First, she opined that "he's made sufficient progress in treatment." Admitting that it is "impossible to be 100 percent sure in terms of a crystal ball," she testified that "there's been no evidence of any flaw in his self control, his volitional or his emotional control and there's been consistent positive result in terms of what he's applied." When directly asked if Fuery was "safe to be at large" and "[would] not engage in *80 acts of sexual violence if he's discharged," Brown replied, "in my opinion, [Fuery] no longer meets criteria, so there's not a more likely than not chance that he will re-offend [because] he's now on the other side in terms of risk and in terms of his ability to control his dynamics."
We reverse the order finding no probable cause, and remand for a trial under section 394.918(4).
GUNTHER and WARNER, JJ., concur.
NOTES
[1] Fuery is 44 years old. According to Brown, "Past the age of 40 [recidivism] starts going down dramatically. Someone who's in his 40's  we know from research from a lot of people  that the recidivism risk is about 8.8 percent for someone in their 40's. By their 50's it's about 7.5 percent. In their 60's it's down to 3 percent."