FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-5181
_____

ALVARO IGNACIO ABAUNZA,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____


On appeal from the Circuit Court for Okaloosa County.
Terrance R. Ketchel, Judge.

July 29, 2019


KELSEY, J.

   Appellant challenges a November 2017 order[1] determining that he was not entitled to a full trial on whether he should be discharged from commitment as a sexually-violent predator.

   _____

   [1] This appeal has been delayed significantly by the parties' extensions and supplementation of the record. In the meantime, Appellant has also appealed the order on the probable cause hearing following his 2018 annual review, in which the trial court reached the same conclusion as in the 2017 order: that Appellant is not yet eligible for release. That case is not yet briefed. *See* Case No. 1D19-932.

Because the trial court's order was supported by competent substantial evidence, we affirm. We reject on the merits and without further comment Appellant's constitutional attack on his commitment, and discuss only the trial court's determination that Appellant had not demonstrated probable cause entitling him to a full trial.

## The Governing Statute.

Florida's Involuntary Civil Commitment of Sexually Violent Predators Act, formerly called the Jimmy Ryce Act,[2] sets forth a procedural path for determining when those committed for treatment are eligible for release. § 394.918, Fla. Stat. They receive an examination of their mental condition at least once a year; and they may retain, or receive at public expense, a qualified professional to perform an examination. § 394.918(1). Examination results are furnished to the trial court that committed the individual, and the court "shall conduct a review of the person's status." *Id.* The individual may petition for release over the objection of the facility's director. § 394.918(2). As amended in 2014, the statute gives the individual the right to have counsel and to be present at the probable-cause hearing, which is a bilateral evidentiary hearing at which the trial court is expressly authorized to "weigh and consider" competing evidence:

> The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing and the right to be present. Both the petitioner and the respondent may present evidence that the court may weigh and consider. If the court determines that there is probable cause to believe it is safe to release

---

[2] The Act was originally named for the 9-year-old victim of a kidnapping, rape, and murder. For an overview of the Act and its history, see *Morel v. Wilkins*, 84 So. 3d 226, 232–33 (Fla. 2012).

the person, the court shall set a trial before the court on the issue.

§ 394.918(3). If the court finds probable cause on the safety and re-offending issues, the court conducts a bench trial to determine the individual's entitlement to release. § 394.918(3), (4).

## Facts.

Appellant attended the probable-cause hearing, and was represented by appointed counsel. As permitted under the statute, and without objection, both Appellant and the State presented solely documentary evidence at the hearing. The State presented the facility's treatment progress report, and Appellant presented a written professional evaluation report by Dr. Shadle. The trial court reviewed both reports, heard argument of counsel, and ruled that Appellant had failed to demonstrate "probable cause to believe it is safe to release" him. *See id.* § 394.918(3).

The facility's report and professional evaluation noted that Appellant was committed with diagnoses of a rape fantasy disorder, a personality disorder with narcissistic and antisocial features, alcohol and cocaine use disorders, and antisocial personality disorder. The facility report noted that behaviors related to these disorders were largely in remission due to Appellant's commitment. After three years of commitment, Appellant was still in the first of four phases of treatment. He failed to progress due to excessive absences, some of his choice and some because he was in secure management, either at his own request or due to disciplinary actions (of which there were six in a six-month period). He had difficulty staying in open population, often making unsubstantiated allegations against other residents and staff, and asserting food poisoning. The facility physician's report concluded that Appellant had not yet addressed relevant treatment issues and therefore that he should continue treatment in the civil commitment center.

Dr. Shadle's report reached the opposite conclusion, tracking the statutory language that it was safe for Appellant to be at large and he likely would not re-offend. The majority of Dr. Shadle's report was devoted to criticizing the civil commitment center and

3

its programs: the programs were not in line with current psychiatric literature, and were ineffective and unnecessary; and the facility was riddled with internal problems. To the limited extent he addressed Appellant individually, Dr. Shadle noted that Appellant was "a habitual criminal offender from his mid-teens to his early forties with some 45 arrests and nine terms in the DOC." Appellant's records indicate that he committed multiple kidnappings and four violent sexual assaults on young women between 1987 and 2010, in between periods of incarceration on various crimes. Dr. Shadle noted that none of Appellant's disciplinary reports were related to his sexual offenses, and that his previous behavior had not occurred at the commitment center—emphasizing that Appellant did not "currently" present with symptoms of the disorders for which he was committed. Dr. Shadle observed that there is no acceptable treatment for psychopaths, so it did not help to keep Appellant at the facility for that. He reported that Appellant considered confinement at the facility a real deterrent to any future re-offending; Appellant recognized there was a consequence to his actions. Dr. Shadle noted that statistically, the odds of post-commitment recidivism in Appellant's age class were roughly equal to the odds of the same crimes' being committed by individuals in the general public.

The trial court's oral ruling and subsequent written order reflected that the court rejected Dr. Shadle's trivialization of recidivism rates, finding the likelihood of re-offense unacceptably high. The court found it important that Dr. Shadle admitted that psychopaths cannot be treated successfully, an opinion that would support a likelihood of re-offending. Further, the court noted that Dr. Shadle's report expressed surprise that Appellant was not engaging in improper sexual acts even in commitment, given his disorders. The court agreed with the facility's assessment that this "remission" from sexual acting-out was occurring only because the commitment circumstances did not lend themselves to new offenses of that kind. The court noted that Appellant was not even trying to participate fully in treatments offered at the facility and had not progressed satisfactorily. The court found probable cause had not been established.

**Analysis.**

The threshold question is our standard of review. Appellant argues that the standard of review is de novo, citing only cases arising under the pre-2014 statute. *See*, *e.g.*, *Westerheide v. State*, 888 So. 2d 702 706 (Fla. 5th DCA 2004) (holding that under the previous statute, trial courts were not authorized to weigh conflicting evidence, but rather were limited to evaluating the sufficiency of petitioners' evidence). Before the amendment, the statute did not allow committed individuals to attend the probable cause hearing or be represented by counsel, and did not authorize trial courts to weigh conflicting evidence. That changed with the 2014 amendment, as the Third District explained in *Barron v. State*, 217 So. 3d 1088, 1091 (Fla. 3d DCA 2017):

> In 2014, the Florida Legislature amended section 394.918(3). *See* Laws of Florida 2014, chapter 2014–2, § 6. The amended version provides that the petitioner has the right to be present at the probable cause hearing, and further provides that both the petitioner and the State may present evidence for the court to consider:

>> The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing <u>and the right</u> ~~but the person is not entitled~~ to be present. <u>Both the petitioner and the respondent may present evidence that the court may weigh and consider.</u> If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.

> (Added language <u>underlined</u>; deleted language indicated by ~~strikethrough~~.)

5

The *Barron* court thus concluded that under the plain and ordinary meaning of the statute as amended in 2014, the trial court was authorized to "weigh and consider" conflicting evidence in a probable cause hearing under the sexually violent predators act. The court affirmed the trial court's assessment and conclusion that probable cause had not been shown. *Id.*

Because the statute now in effect (and in effect at the time of Appellant's adjudication and commitment as a sexually violent predator and at his probable cause hearing) gives committed individuals the right to be present at probable cause hearings, allows both sides to present evidence, and authorizes trial courts to weigh and consider that evidence, probable cause hearings are akin to other non-jury evidentiary hearings at which trial courts hear and weigh conflicting evidence. In such proceedings, our standard of review limits us to determining whether the trial court's conclusion was supported by competent substantial evidence. *See Teffeteller v. Dugger*, 734 So. 2d 1009, 1017 (Fla. 1999) ("The standard of review applicable to a trial court decision based on a finding of fact is whether the decision is supported by competent substantial evidence.") (quoting Philip J. Padovano, *Florida Appellate Practice*, § 9.6, at 155 (2d ed. 1997); *Clegg v. Chipola Aviation, Inc.*, 458 So. 2d 1186, 1187 (Fla. 1st DCA 1984) ("The resolution of factual conflicts by a trial judge in a nonjury case will not be set aside on review unless totally unsupported by competent substantial evidence.") (quoting *Concreform Sys., Inc. v. R.M. Hicks Constr. Co.*, 433 So. 2d 50, 50 (Fla. 3d DCA 1983)); *see also Mitchell v. State*, 98 So. 3d 694, 696 (Fla. 1st DCA 2012) ("The trial court's determination of the weight and credibility of competing expert opinions in chapter 394 proceedings will not be overturned unless clearly erroneous.").

We find that the trial court's ruling is supported by competent substantial evidence as set forth above. Even if our review were de novo, our conclusion would be the same on the evidence presented here. We view the evidence as did the trial court, as falling short of establishing probable cause. We find it particularly troubling that Appellant refuses or fails to participate in available treatment. We reject Dr. Shadle's opinion and Appellant's argument that Appellant and others similarly situated should be released into the general population because in their view, the

entire concept of civil commitment, the treatment offered, and the facility itself are ineffectual. The Legislature has concluded otherwise. We will apply the law as written. We note as well that the trial court subsequently reached the same conclusion about Appellant in the more recent 2018 annual review and probable cause hearing, lending weight to the conclusion that as of his 2017 review and hearing, Appellant had not satisfied the statutory requirements for establishing probable cause.

AFFIRMED.

WOLF and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Andy Thomas, Public Defender, and Greg Caracci, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, Daniel Krumbholz, Assistant Attorney General, and Tabitha Herrera, Assistant Attorney General, Tallahassee, for Appellee.